UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| CHRISTINE FISKE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiff, | | |
| v. | | Civil Action No. 13-10478-DJC |
| MEYOU HEALTH, INC. et al., | | |
| Defendants. | | |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                         June 20, 2014

#### I.  Introduction

Plaintiff Christine Fiske ("Fiske") has filed this lawsuit against her former employer, MeYou Health, Inc., ("MYH"), its parent corporation, Healthways, Inc. ("Healthways"), Insperity PEO Services, L.P. ("Insperity") and Chris Cartter ("Cartter,") (collectively "Defendants") alleging discrimination on the basis of pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), the Pregnancy Discrimination Act ("PDA")'s amendment to Title VII and Mass. Gen. L. c. 151B; and a violation of her rights under the Family Medical Leave Act ("FMLA") and Massachusetts Medical Leave Act ("MMLA"). D. 16. Defendants have moved for summary judgment, D. 29, to strike an affidavit Fiske submitted in opposition to summary judgment, D. 38, and to quash two subpoenas, D. 40. Fiske has moved to increase the limit for depositions, D. 45, and to extend the deadline for fact discovery, D. 44. For the following reasons, the Court DENIES the motion for summary judgment, ALLOWS the motion to strike in part, ALLOWS the motion to extend the deadline

1

for fact discovery, ALLOWS the motion to quash in part and ALLOWS the motion to increase the deposition limit in part.

## II. Standard of Review

The Court grants a motion for summary judgment when there is no genuine dispute of material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the Court "must scrutinize the record in the light most favorable to the summary judgment [opponent] and draw all reasonable inferences . . . to that party's behoof." Alliance of Auto. Mfrs. v. Gwadosky, 430 F.3d 30, 34 (1st Cir. 2005) (citation omitted).

The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). If the movant meets its burden, the non-moving party may not rest on the allegations in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts that demonstrate a triable issue. Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 5 (1st Cir. 2010). Although the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor," Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009), "conclusory allegations, improbable inferences, and unsupported speculation" proffered by the non-movant are insufficient to create a genuine issue of material fact to survive summary judgment. Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir. 2009) (citation omitted).

**III.    Factual Background**

The Court draws the facts of this case from the parties' statements of facts and their responses to same. D. 29-2, 33 (collectively "SOF").[1] MYH was founded in 2009 and is a wholly-owned subsidiary of Healthways. SOF ¶¶ 2-3. Cartter is MYH's General Manager. Id. ¶ 4. Defendants assert that Insperity is a "Professional Employer Organization that provides outsourced human resources services and other functions to MYH," but Fiske argues that Insperity was Fiske's "co-employer." Id. ¶ 5. Fiske began working at MYH as its Online Marketing Director on October 19, 2010. Id. ¶ 6. Her salary was $130,000. Id. ¶ 52. MYH has a flexible hours policy and characterizes itself as "family friendly." Id. ¶ 8. Indeed, prior to Fiske's termination, MYH never refused her requests to accommodate family issues and Fiske would leave MYH's office around 2:30 p.m. at least once per week to pick up her children from school. Id. ¶¶ 9-10.

In September 2011, Fiske informed Cartter that she was pregnant. Id. ¶ 11. Upon hearing the news, Cartter congratulated Fiske, but expressed concern that he would have to plan for different circumstances because Fiske's pregnancy may impact her decision to come back to work. Id. ¶ 15. Cartter explained that when his partner had their third child, she opted not to return to work. Id. Afterwards, Fiske's conditions of employed changed at least to the extent that Cartter became more "nitpicky" regarding Fiske's work product, but Fiske also asserts that her meetings became less frequent with Cartter. Id. ¶ 13. No other MYH employee has ever taken maternity leave. Id. ¶ 35.

As Online Director of Marketing, Fiske was part of MYH's leadership team and steering committee and took part in at least some regular meetings to discuss company issues. Id. ¶ 18.

---

[1] Defendants have not responded to Plaintiffs' "further statement of material facts," SOF ¶¶ 32-84, instead moving her supporting affidavit, D. 38.

3

Toward the end of 2011, MYH was planning on conducting clinical trials of its "core product," the Daily Challenge. Id. ¶ 19. The parties agree that at this time, the clinical trial budget was under-allocated. Id. ¶ 20. MYH contends that at least some of its marketing dollars for 2012 were repurposed to fund the clinical trial, though some of these resources were used for marketing the clinical trial itself. Id. ¶ 23. Defendants claim to have attempted to save MYH's marketing department and Fiske's job. Id. ¶¶ 24-25. As part of its cost-cutting efforts, MYH terminated its contract with its outside public relations firm at the end of 2011. Id. ¶ 26.

Against this backdrop, Fiske was terminated from her employment on January 27, 2012. Id. ¶ 7. The position of Online Marketing Director was eliminated. Id. ¶ 28. Fiske was told that budgetary constraints prompted the elimination of her position. Id. ¶ 29. Some of Fiske's job duties were shifted to other employees and to Healthways. Id. ¶¶ 64-69. Although Cartter asserted at his deposition that Fiske's salary was not the only reason she was terminated, MYH's Seth Lawton received a $10,000 pay increase in 2012 after taking some of Fiske's other duties. Id. ¶¶ 49, 54. In their position statement before the Massachusetts Commission Against Discrimination ("MCAD"), Defendants asserted that Fiske was terminated due to cuts to the marketing budget rendering Fiske's services unnecessary. Id. ¶ 56.

During the relevant time, there was a three or four to one male to female ratio at MYH. Id. ¶ 36. Of the three employees terminated from MYH since 2010, two were female and neither was terminated for performance reasons. Id. ¶ 37.

## IV. Procedural History

Fiske commenced this action in Suffolk Superior Court on December 31, 2013. D. 16 at 1. Defendants removed this action to this Court on March 4, 2013. D. 1. Defendants subsequently moved for summary judgment, D. 29, and to strike Fiske's affidavit filed in

4

opposition to summary judgment on January 15, 2014. D. 38. Healthways moved to quash deposition subpoenas on January 16, 2014. D. 40. On January 24, 2014, Fiske moved to extend the discovery deadline and to increase the deposition limit from the presumptive limit of ten to fourteen. The Court heard oral argument on these matters on March 5, 2014, D. 52, taking them under advisement.

## V. Discussion

### A. **Defendants' Motion to Strike**

To decide Defendants' motion for summary judgment, the Court must determine what evidence it can consider. See Fed. R. Civ. P. 56(c). Defendants have moved to strike Fiske's affidavit submitted in opposition to the motion for summary judgment, arguing that "[a] party opposing summary judgment may not manufacture a dispute of fact by contradicting earlier sworn deposition testimony. D. 38 at 1 (citing Torrech-Hernandez v. General Electric Co., 519 F.3d 41, 47 (1st Cir. 2008)).

That is, under Torrech-Hernandez, a court, when considering the evidence in deciding summary judgment, may disregard the non-moving party's self-serving affidavit where it conflicts with its own sworn deposition testimony. Id. at 47. It is also true that "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment." Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Nor can the Court consider sworn allegations that are not based upon personal knowledge. Cadle Co. v. Hayes, 116 F.3d 957, 961 (1st Cir. 1997) (noting that "[s]tatements made upon information and belief, as opposed to personal knowledge, are not entitled to weight in the summary judgment balance"). Here, Fiske has made certain attestations that are based upon hearsay. Paragraph 26 states what a "female contractor to MYH" told Fiske. In addition, there are statements that the Court concludes are not

based upon personal knowledge. For example, Fiske makes numerous attestations regarding the responsibilities and salary of her subordinates after MYH terminated her and she was no longer working there. D. 33-3 ¶¶ 16, 18, 20, 21, 28, 31. In addition, she made an attestation regarding MYH's denial of another employee's vacation pay. Id. ¶ 25. The Court therefore STRIKES paragraphs 16, 18, 20, 21, 25, 26 and 31 *in toto* and 28[2] to the extent it purports to provide information outside of Fiske's personal knowledge.[3] Fiske's affidavit otherwise stands and the Court has considered the remainder of same in resolving the pending motion for summary judgment.

**B.   Defendants' Motion for Summary Judgment**

  *1.   Defendants Have Not Demonstrated an Absence of Any Genuine Issue of Fact Precluding Summary Judgment on Fiske's Discrimination Claims*

     a.   Standards for Liability Under the PDA, Title VII and Mass. Gen. L. c. 151B

The PDA prohibits discrimination "because of or on the basis of pregnancy, childbirth or related medical conditions." 42 U.S.C. § 2000e(k). Where, as here, a plaintiff does not suggest the existence of direct evidence explicitly showing intentional discrimination, i.e., a "smoking gun," Smith v. F. W. Morse & Co., Inc., 76 F.3d 413, 421 (1st Cir. 1996), the analytic framework set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) governs claims under the PDA. Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 12 (1st Cir. 2011) (applying McDonnell Douglas to PDA claims).

---

[2] At oral argument, there was some suggestion that Defendants' motion was limited to these paragraphs. This does not compel a different result here.

[3] The Court does not credit facts in Fiske's statement of facts to the extent that they rely on these paragraphs. As Defendants has not responded to the other facts asserted in Fiske's statement of facts, any remaining facts asserted by Fiske are "deemed admitted." D. Mass. L.R. 56.1.

The three stages of the McDonnell Douglas analysis as applied to pregnancy discrimination cases are "well documented." Weston-Smith v. Cooley Dickinson Hosp., Inc., 153 F. Supp. 2d 62, 70 (D. Mass. 2001). First, a plaintiff must establish by a preponderance of the evidence a prima facie case that "(1) she is pregnant (or has indicated an intention to become pregnant), (2) her job performance has been satisfactory, but (3) the employer nonetheless dismissed her from her position (or took some other adverse employment action against her) while (4) continuing to have her duties performed by a comparably qualified person." Smith, 76 F.3d at 421 (1st Cir. 1996). The burden of establishing a prima facie case creates a rebuttable presumption "that the employer unlawfully discriminated against the employee." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).

At the second stage, the burden shifts to the employer to produce "an explanation to rebut the prima facie case–that the burden of 'producing evidence' that the adverse employment actions were taken 'for a legitimate, nondiscriminatory reason,'" and "'[t]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506-07 (1993) (quoting Burdine, 450 U.S. at 254-55 & n.8). At this stage, the Court must determine whether the employer has met merely its burden of production and not necessarily its burden of persuasion. Id. at 509. If an employer carries its burden at this stage, "the presumption of unlawful discrimination disappears." Weston-Smith, 153 F. Supp. 2d at 70 (citation omitted).

Finally, at the third and final stage of the McDonnell Douglas analysis, the burden shifts back to plaintiff, who has the ultimate burden of persuasion to establish by a preponderance of the evidence "that the legitimate reasons offered by the defendant were not its true reasons, but

were a pretext for discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000) (internal quotations omitted). In the context of PDA claims, federal law "mandates that an employer must put an employee's pregnancy (including her departure on maternity leave) to one side in making its employment decisions" but "does not command that an employer bury its head in the sand and struthiously refrain from implementing business judgments" simply because they affect a pregnant employee, since federal law "requires a causal nexus between the employer's state of mind and the protected trait (here, pregnancy)," Smith, 76 F.3d at 424-425. The plaintiff must persuade the trier of fact that the employer was motivated by discriminatory animus and that the employer's assertions are pretextual. "The mere coincidence between [the plaintiff's pregnancy] and the employment decision may give rise to an inference of discriminatory animus." Id. at 425 (citing St. Mary's Honor Ctr., 509 U.S. at 507-08). "To survive summary judgment, of course, the plaintiff need not carry that burden entirely; she needs to show merely that after viewing the undisputed facts in the light most favorable to her position, one or more genuine issues of material fact remain that, if resolved in her favor, a reasonable jury could find that the plaintiff had carried her ultimate burden." Gervais v. Franklin Pub. Sch., No. 09-10719-DJC, 2012 WL 988026, at *10 (D. Mass. Mar. 23, 2012) (citing St. Mary's Honor Ctr., 509 U.S. at 507-08).

Fiske has also invoked the "mixed-motive" theory of liability. D. 32 at 2. Although the First Circuit has not "definitively disentangled or reconciled" the mixed-motive approach from McDonnell Douglas, Chadwick v. WellPoint, Inc., 561 F.3d 38, 45 n. 8 (1st Cir. 2009), the two analyses are separate avenues of recovery. Seetharaman v. Stone & Webster, Inc., No. 05-11105-RWZ, 2009 WL 1364706, at *4 (D. Mass. May 11, 2009); see also White v. Baxter Healthcare Corp., 533 F.3d 381, 400 (6th Cir. 2008) (holding that "the McDonnell

8

Douglas/Burdine burden-shifting framework does not apply to the summary judgment analysis of Title VII mixed-motive claims") (emphasis in original). Under this framework, codified at 42 U.S.C. § 2000e–2(m), where there is evidence of both discriminatory and non-discriminatory animus, a "plaintiff's burden is tempered so that she need prove only that the discriminatory action was a motivating factor in an adverse employment decision." Patten v. Wal–Mart Stores East, Inc., 300 F.3d 21, 25 (1st Cir. 2002). "[T]he employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff." Desert Palace, Inc. v. Costa, 539 U.S. 90, 94 (2003). To avail itself of the affirmative defense, the employer must "demonstrate that it would have taken the same action in the absence of the impermissible motivating factor." Desert Palace, 539 U.S. at 94 (citation and alterations omitted0)

Massachusetts law prohibits employers from discriminating on the basis of sex, Mass. Gen. L. c. 151B, § 4(1). Wheelock Coll. v. Mass. Comm'n Against Discrimination, 371 Mass. 130, 138 (1976) (adopting the McDonnell Douglas framework with respect to claims arising under chapter 151B); see also Chief Justice for Admin. & Mgmt. of the Trial Court v. Mass. Comm'n Against Discrimination, 439 Mass. 729, 732 (2003); but see Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 45 (2005) (noting that a difference between the state and federal applications of the McDonnell Douglas framework is that the fourth element of the state law framework "in a reduction in force case" does not require the plaintiff to show that the employer continued to have her duties performed by a comparably qualified person; instead, the plaintiff can satisfy the fourth element "by producing some evidence that her layoff occurred in circumstances that would raise a reasonable inference of unlawful discrimination").

9

Courts interpreting chapter 151B "may look to" but "are not, however, bound by interpretations of [Title VII] statute in construing [c. 151B]." College-Town, Div. of Interco, Inc. v. Mass. Comm'n Against Discrimination, 400 Mass. 156, 163 (1987). In many respects, the framework for resolving chapter 151B pregnancy discrimination claims is very similar to the federal framework for resolving claims brought under the PDA:

> With respect to summary judgment, it follows that, if a plaintiff has produced evidence sufficient to support a prima facie case of discrimination, and has further offered evidence sufficient to support a determination either that the employer's reason was a pretext or that the actual reason for the adverse hiring decision was discrimination, summary judgment for a defendant is inappropriate. The ultimate issue of discrimination, raised by the plaintiff's and defendants' conflicting evidence as to the defendants' motive, is not for a court to decide on the basis of affidavits, but is for the fact finder after weighing the circumstantial evidence and assessing the credibility of the witnesses.

Blare v. Husky Injection Molding Sys. Bos., Inc., 419 Mass. 437, 445 (1995). In addition, Massachusetts courts have adopted the "mixed-motive" doctrine codified in Title VII. See Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 112-13 (2009) (citations omitted).

### b. Fiske Has Identified Some Evidence that MYH's Motives Were at Least Discriminatory in Part

There is no dispute that Fiske meets the first, second and third prongs of the McDonnell Douglas prima facie case. She was pregnant at the time of her termination, SOF ¶ 7, 11, she was performing her job satisfactorily, id. ¶ 59, and she was nonetheless terminated, id. ¶ 7. As to the fourth element, however, whether Fiske's position "remained open or was filled by someone else with similar qualifications," Prescott v. Higgins, 538 F.3d 32, 40 (1st Cir. 2008), Fiske has conceded that "the position of Online Marketing Director was eliminated." SOF ¶ 28.

Fiske does not argue to the contrary in her opposition, D. 32, but instead focuses on the ways in which MYH's marketing operations continued after MYH terminated her, arguing that the responsibilities were not eliminated, but merely shifted elsewhere to Seth Lawton, Eugenie

Olson and Alicia Benjamin. Id. ¶ 49. "Yet, a position elimination defense is not defeated merely because another employee, already on the payroll, is designated to carry out some or all of the fired employee's duties in addition to his own, or because those duties are otherwise reallocated within the existing work force." Smith, 76 F.3d at 423.

Fiske cites Kiesling v. SER-Jobs for Progress, Inc., 19 F.3d 755 (1st Cir. 1994) to support her argument that where other employees assume the terminated employee's responsibilities, this is sufficient to establish the fourth prong of the McDonnell Douglas prima facie case. Id. at 760. Although this may be true as a general matter, "[t]here is little doubt that an employer, consistent with its business judgment, may eliminate positions during the course of a downsizing without violating Title VII even though those positions are held by members of protected groups (pregnant women included)." Smith, 76 F.3d at 422. The only caveat to this principle is that "an employer who selectively cleans house cannot hide behind convenient euphemisms such as 'downsizing' or 'streamlining.'" Id.

Ultimately, this is not a conflict that the Court must resolve here, for as discussed above, Fiske has also invoked the mixed-motive theory of liability. A Title VII plaintiff can establish a violation of Title VII under this theory by showing that discrimination on the basis of sex – and by extension pregnancy – played a role in the plaintiff's termination. Desert Palace, 539 U.S. at 101 (citing 42 U.S.C. § 2000e-2(m)). Few cases have analyzed the implications of Desert Palace and the statutory language it interprets in cases where the employer has presented evidence at summary judgment that it eliminated the plaintiff's position. Some courts have found that mixed-motive claims rise and fall with traditional disparate treatment claims brought under the McDonnell Douglas framework. See Robertson v. Alltel Info. Servs., 373 F.3d 647, 652 (5th Cir. 2004) (noting that where the plaintiff offers no evidence from which a fact finder can infer

11

discriminatory intent, the result of the mixed motives inquiry established in Desert Palace is the same as the result under the McDonnell Douglas pretext inquiry); Gonzalez v. Temple University, No. 11-7758, 2013 WL 1482623, at *7 n.6 (E.D. Pa. Apr. 11, 2013) (discrediting plaintiff's argument that "his position was eliminated as part of a 'faux' restructuring"); Miller v. Cleveland Cnty., No. 10-620-C, 2011 WL 2634190, at *3-4 (W.D. Okla. July 5, 2011) (allowing summary judgment both on McDonnell Douglas and Desert Palace claims where Plaintiff presented no evidence of discrimination other than his allegation that his performance was satisfactory and subject to a reduction in force). Where a plaintiff presents some evidence that the employer's motivations for eliminating the plaintiff's position was mixed, however, courts have denied summary judgment. See, e.g., Pucci v. Nineteenth Dist. Court, 565 F. Supp. 2d 792, 811 (E.D. Mich. 2008), aff'd in part, rev'd in part on other grounds, 628 F.3d 752 (6th Cir. 2010).

Fiske has at least raised a genuine issue of fact regarding MYH's motivations in terminating her. Had Fiske only raised Cartter's comment about whether Fiske would return to work after her maternity leave, SOF ¶ 15, this might be a case where an employer's "stray remarks in the workplace . . . [are] insufficient to prove [an] employer's discriminatory animus." Shorette v. Rite Aid of Maine, Inc., 155 F.3d 8, 13 (1st Cir. 1998) (citation and internal quotation marks omitted). Even so, such a remark can be indicative of discriminatory intent. Eslinger v. U.S. Cent. Credit Union, 866 F. Supp. 491, 497-98 (D. Kan. 1994) (considering employer's remark expressing doubt that pregnant women return to work after giving birth as evidence of discriminatory intent).

Here, however, Fiske has shown more than one isolated "stray remark." There is at least arguably some evidence that Fiske's pregnancy played at least some role in her termination.

Cartter voiced concerns about Fiske's ability to continue to serve and the company terminated her while she was pregnant. SOF ¶¶ 7, 15. Accordingly to Fiske, Cartter also became more critical of her work after her announcement. SOF ¶ 34. Although Defendants assert that the entire marketing division was repurposed to pay for MYH's clinical trial, id. ¶ 23, Fiske has presented at least some evidence that Fiske's former subordinates continued to perform duties related to marketing after MYH terminated her. For example, MYH conducted its efforts to recruit users to the clinical trial through Facebook advertising, which was at the heart of Fiske's job duties prior to her termination. Id. ¶ 47. Lawton, Benjamin and Olson also conducted other marketing work after MYH terminated Fiske. Id. ¶ 49. Lawton conducted Facebook advertising, id. ¶ 64, and Olson attended a conference for marketing purposes. Id. ¶ 66. MYH never terminated any of these non-pregnant employees. Id. ¶ 55. In fact, Lawton a received a salary increase after MYH terminated Fiske. Id. ¶ 54. As "rejection of the defendant's proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination," St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993) (alterations omitted), this lends support to Fiske's position that her pregnancy at least played a part in her termination. See 42 U.S.C. § 2000e-2(m).

In their reply, Defendants argue that Lawton and Benjamin performed different job functions than Fiske did during her tenure. D. 37 at 6. Certainly if true, this would undercut Fiske's claim that her job was not eliminated. But Fiske has presented some evidence to the contrary, and "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

Defendants argue that this Court's prior decision in Gervais controls the outcome here. In that case, however, there was a complete absence of evidence offered by the plaintiff for her contention that "her position was not dissolved, but was subsequently filled with an individual for whom no serious claim has been made was more or better qualified," Gervais, 2012 WL 988026, at *12, and the employee there did not raise the mixed-motive challenge. Moreover, unlike Fiske, Gervais was a year-to-year employee who had not been performing adequately and whose contract her employer simply chose not to renew. Id. at *6-7. Accordingly, the Court finds that Fiske has raised sufficient evidence to defeat summary judgment here on both her state and federal claims. The Court DENIES the motion for summary judgment to the extent Defendants seek dismissal of Fiske's claims under Title VII, the PDA and c. 151B.

2. *Defendants Are Also Not Entitled to Summary Judgment on Fiske's FMLA Claim*

a. Standards for Liability Under FMLA

The FMLA entitles eligible employees to twelve weeks of leave because of the birth of a child. 29 U.S.C. § 2612. The FMLA also prohibits employers from interfering with the exercise of this entitlement and from retaliating against any employee who exercises rights under the FMLA. 29 U.S.C. § 2615. Department of Labor regulations require that eligible employees "[be] employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite." 29 C.F.R. § 825.110(a)(3). Similarly, a "covered employer" is "any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 C.F.R. § 825.104(a).

b. Summary Judgment is Inappropriate on Plaintiff's FMLA Claim

Defendants argue that they are entitled to summary judgment on Fiske's FMLA claim because it terminated her prior to her maternity leave and therefore did not deny Fiske her benefits. D. 29-1 at 12-13. Although the First Circuit has not decided whether the fact that an employee was not eligible for leave at the time she requested it precludes her from stating a FMLA claim, the Eleventh Circuit recently decided that failure to hold otherwise would frustrate the purpose of the statute. Pereda v. Brookdale Senior Living Cmty., Inc., 666 F.3d 1269, 1274 (11th Cir. 2012) (holding that "because the FMLA requires notice in advance of future leave, employees are protected from interference prior to the occurrence of a triggering event, such as the birth of a child"). This Court finds this reasoning persuasive and declines to grant the motion as to the merits of this claim. Accordingly, Defendants' argument as to the merits of Fiske's FMLA claim fails.

Defendants' primary argument with respect to Fiske's FMLA claim, however, is that none of the defendants are covered employers under the FMLA. D. 29-1 at 12. Fiske correctly notes, however, that Defendants' assertion that MYH has never had more than 50 employees has no evidentiary support. This alone warrants a finding that Defendants have not met their burden on summary judgment on this claim.

Even if Defendants had met their burden, Fiske asserts that Defendants MYH, its parent company Healthways and its contractor Insperity are "co-employers." D. 32 at 14. As between a parent company and a subsidiary, the employees of both entities may be considered a single employer for FMLA purposes under the "integrated employer" test. Engelhardt v. S.P. Richards Co., Inc., 472 F.3d 1, 4-5 (1st Cir. 2006) (discussing Radio & Television Broadcast Technicians Local 1264 v. Broadcast Service of Mobile, Inc., 380 U.S. 255, 256 (1965) and 29 C.F.R. § 825.104(c)(1) and (2) which delineate common management, interrelation between operations,

centralized control of labor relations and common ownership as factors to consider in determining whether there is an "integrated employer"). As of the date of Fiske's opposition to the motion for summary judgment, Plaintiff had not deposed any representatives or employees of Insperity or Healthways. This additional discovery may bear on Fiske's contention that Insperity and/or Healthways were Fiske's co-employer(s). Accordingly, a decision on summary judgment on this ground is premature. The Court therefore ALLOWS the relief sought by Fiske under Fed. R. Civ. P. 56(d) and DENIES summary judgment on Fiske's FMLA claim without prejudice.

### 3. *Defendants Are Also Not Entitled to Summary Judgment on Fiske's MMLA and Retaliation Claims*

Defendants similarly argue that they are entitled to summary judgment on Fiske's MMLA and retaliation claims because she had not yet taken maternity leave at the time she was terminated. D. 29-1 at 12-13. Just as Massachusetts courts "have often applied Federal case law interpreting cognate Federal antidiscrimination statutes when looking to interpret [Mass. Gen. L.] c. 151B," the Supreme Judicial Court has followed federal courts in their application of the FMLA when deciding issues related to the MMLA. Global NAPs, Inc. v. Awizus, 457 Mass. 489, 507-08 (2010). Just as it would frustrate the purpose of the FMLA to allow employers safe harbor by firing employees who have stated their intent to engage in protected conduct, but who have not yet engaged in the protected conduct, so too would it frustrate the MMLA's purposes to grant summary judgment to Defendants here. Accordingly, to the extent that Defendants have moved for summary judgment on Fiske's MMLA and related c. 151B, §4(4) retaliation claim, that motion is DENIED.

## C. **Discovery Motions**

### 1. *The Motion to Quash Is Granted in Part*

Fiske has subpoenaed Healthways' President and CEO Ben Leedle and its Executive Vice President and CFO, Alfred Lumsdaine. Healthways has moved to quash these subpoenas, arguing that their testimony would have limited evidentiary value, would be cumulative of other discovery in this case and would be an undue burden on the deponents. D. 40 at 2. The Court notes that Fiske "could have noticed the deposition of the defendant . . . pursuant to Rule 30(b)(1), [because the deponents are] officer[s], director[s] or managing agent of the defendant[, here, Healthways]." Contardo v. Merrill Lynch, Pierce, Fenner & Smith, 119 F.R.D. 622, 623 (D. Mass. 1988) (citing GTE Products Corp. v. Gee, 115 F.R.D. 67 (D. Mass. 1987)). For this reason, the Court dispenses with Fiske's argument that Healthways lacks standing to quash subpoenas directed to its officers, see D. 43 at 1.

In either case, both Rule 26 and Rule 45 permit the Court to limit discovery when it is unduly burdensome or cumulative. Fed R. Civ. P. 26(b)(2)(C), 45(c)(3)(A). Healthways argues that such limitation is appropriate here because Leedle and Lumsdaine's only knowledge pertaining to this case is that "the decision to terminate Ms. Fiske was made by its subsidiary MeYou Health and Mr. Cartter, a fact that has already been established ad nauseam in discovery." D. 40 at 2. Fiske counters that, during his deposition, Cartter testified that he discussed with Leedle the elimination of the marketing department. D. 43 at 3. The reasons for eliminating the department – and Fiske's position along with it – are central to this case. Accordingly, the Court finds that Leedle has relevant testimony to offer here and that the purpose of this deposition does not appear to amount to, as Healthways suggest, mere harassment.

In addition, as discussed above, the common management of MYH and Healthways, interrelation between their operations, the centralized control of their labor relations and the nature of their common ownership is relevant to Fiske's claim that Healthways was Fiske's "co-

employer" for the purposes of her FMLA claim. See 29 C.F.R. § 825.104. Presumably, Healthways' chief executive officer would be in a good position to testify as to these issues.

As to Lumsdaine, unlike Leedle, Fiske has made no such particularized showing as to the relevance of his testimony to this case and there has been no demonstration that the topics of Lumsdaine's deposition would differ from those in Leedle's. In light of this circumstance and the fact that Fiske has already anticipated deposing more than ten individuals, D. 45; see Fed. R. Civ. P. 30(a)(2)(A)(i) (requiring leave of the Court to conduct more than ten depositions), the Court will grant the relief that Healthways seeks and quash the subpoena as to Lumsdaine.

### 2. *The Court Grants the Motion to Increase Deposition Limit to Fourteen in Part*

Fiske has moved to increase the limit on depositions to a total of fourteen. Although the presumptive limit of depositions is ten, courts may grant parties leave to conduct more than ten depositions. Id. Courts generally grant such requests upon a showing of a demonstrable need to do so. See United States ex rel. Banigan v. Organon USA Inc., No. 07-12153-RWZ, 2013 WL 4736844, at *2-3 (D. Mass. Aug. 30, 2013); Coach, Inc. v. Gata Corp., No. 10-CV-141-LM, 2011 WL 198015, at *2-3 (D.N.H. Jan. 20, 2011); cf. San Francisco Health Plan v. McKesson Corp., 264 F.R.D. 20, 21 (D. Mass. 2010) (denying motion in part because party seeking leave made no showing as to necessity).

Here, Fiske has conducted six depositions as of the date of her motion. D. 45 at 1. In addition, Fiske had noticed the following depositions: (1) Josee Poirier, Director of Program Design and Research, MeYou Health; (2) Ben R. Leedle, Jr., Chief Executive Officer of Healthways; (3) Alfred Lumsdaine, Chief Financial Officer of Healthways; (4) Alicia Benjamin, former MeYou Health employee; (5) Seth Lawton, former MeYou Health employee; (6) Defendant Healthways, Inc. (pursuant to F.R.C.P. 30(b)(6)); (7) Defendant MeYou Health, Inc.

18

(pursuant to F.R.C.P. 30(b)(6)); and (8) Defendant Insperity PEO Services, L.P. (pursuant to F.R.C.P. 30(b)(6)). By the date of Defendants' opposition, Fiske had deposed Insperity's corporate representative and had scheduled a deposition for Healthways' representative. D. 48 at 2.

The Court has already determined that Fiske's deposition of Lumsdaine is unnecessary and that a deposition of Ben Leedle is appropriate in this case. The depositions of Lawton and Benjamin are reasonably calculated to lead to discoverable evidence here for two reasons: first, as Fiske's former subordinates at MYH, they may have information regarding the nature of Fiske's performance; and second, Fiske alleges that these two employees took on at least some of Fiske's responsibilities after her termination, undercutting Defendants' assertion that Fiske's position was truly eliminated. As for Poirier, Fiske asserts that as the head of research, Poirier has knowledge regarding MYH's clinical trial, which Fiske alleges was a pretext for her termination. D. 44 at 3. However, Fiske has made no showing that Poirier has knowledge regarding the funding of the clinical trial and already has had occasion to depose Cartter and Erin-McGarry Sullivan, who by all accounts were the ones responsible for allocating the funds for the trial themselves. SOF ¶¶ 18-27. Accordingly, the Court finds that Poirier's deposition would be cumulative. Finally, Fiske asks to depose representatives of MYH's corporate representative. Although Defendants suggest that MYH would designate Cartter, whom Fiske has already deposed, "[j]ust because [a party] may choose to designate certain individuals as its corporate designees whose fact depositions have already occurred does not insulate [the party] from the requirements of Rule 30(b)(6). Such a finding would eviscerate Rule 30(b)(6)." Ice Corp. v. Hamilton Sundstrand Corp., No. 05-4135-JAR, 2007 WL 1500311 (D. Kan. May 21, 2007). Fiske may take MYH's 30(b)(6) deposition.

Defendants suggest that Fiske has squandered her depositions by electing to depose former co-workers who did not supervise her. D. 48 at 2. They simultaneously acknowledge the purpose of these depositions, which was to address Fiske's contention that the marketing department was not eliminated and that the purported elimination was a pretext for her termination. Id. That these individuals might have testimony which would be relevant to this issue undercuts any suggestion of the impropriety of same. Accordingly, the Court ALLOWS Fiske's request in part only to the extent she wishes to depose any of the Rule 30(b)(6) designees, Leedle, Benjamin and Lawton.[4]

### 3. The Court Allows the Motion to Extend the Discovery Deadline

In light of the foregoing, the Court will ALLOW the motion to extend the discovery deadline, but only to the extent to address outstanding discovery consistent with this Order. Said discovery must be completed within 30 days of this Order.

## VI. Conclusion

For the aforementioned reasons, the Court ALLOWS the motion to strike, D. 38, in part; DENIES the motion for summary judgment, D. 29; ALLOWS the motion to increase the deposition limit to 14, D. 45, in part and DENIES it in part; ALLOWS the motion in quash, D. 40, in part and DENIES it in part; and ALLOWS the motion to extend the deadline for fact discovery, D. 44.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[4] To extent that any depositions have been taken since the date of the parties' briefing of this matter, nothing in this Memorandum and Order should be construed as limiting Fiske from deposing any of the Rule 30(b)(6) designees, Lawton, Benjamin or Leedle.